# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br><br> PTC SEAMLESS TUBE CORP. f/k/a <br> PTC ALLIANCE PIPE ACQUISITION LLC, <br><br> Debtor. | Chapter 11 <br><br> Case No.  15-21445 |
| PTC SEAMLESS TUBE CORP., <br><br> Movant, <br><br> v. <br><br> NO RESPONDENT. | Document No.____ |

**DEBTOR'S EMERGENCY MOTION FOR AN ORDER UNDER 11 U.S.C.
§§ 105(a), 363(b), 363(c), 507(a), 1107(a), AND 1108 (A) AUTHORIZING PAYMENT OF
PREPETITION EMPLOYEE OBLIGATIONS INCLUDING WAGES, SALARIES, AND
EMPLOYEE BENEFITS, (B) AUTHORIZING CONTINUATION OF EMPLOYEE
BENEFIT PLANS AND PROGRAMS POST-PETITION, AND (C) DIRECTING ALL
BANKS TO HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION
EMPLOYEE OBLIGATIONS AND ALLOWING THE DEBTOR TO USE BRIDGE
FINANCING FOR THE PAYMENT OF PREPETITION EMPLOYEE OBLIGATIONS**

PTC Seamless Tube Corp. f/k/a PTC Alliance Pipe Acquisition LLC (the

"Debtor"), the debtor and debtor-in-possession in the above-captioned case (this "Chapter 11

Case"), through its undersigned counsel, hereby moves (this "Motion") this Court for the entry of

an order, pursuant to sections 363(b), 363(c), 507(a), 1107(a), and 1108 of title 11 of the United

States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"):  (i) authorizing the Debtor to

pay or otherwise honor the Debtor's employee-related prepetition obligations to, or for the

benefit of, employees and former employees; (ii) authorizing the continuation post-petition of the

employee benefit plans and programs in effect immediately prior to the filing of this case; and

(iii) directing all banks to honor prepetition checks for payment of the Debtor's prepetition employee obligations and allowing the Debtor to use bridge financing for the payment of prepetition employee obligations.  In support of this Motion, the Debtor relies on the *Declaration of Peter Whiting in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration"), filed contemporaneously herewith, and respectfully represents as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding under 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections 105(a), 363(b), 363(c), 507(a), 1107(a), and 1108 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004.

## BACKGROUND

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

4. The Debtor continues in the management and operation of its business and property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee, examiner, or creditors' committee has been appointed in this Chapter 11 Case.

5. Information regarding the Debtor and this Chapter 11 Case, including the Debtor's business, corporate structure, financial condition, and the reasons for and objectives of

this Chapter 11 Case, is set forth in the First Day Declaration, filed on the Petition Date and fully incorporated herein by reference.[1]

**A.    Wages, Salaries, and Commissions**

6.    As of the Petition Date, the Debtor's workforce consisted of nineteen (19) employees (the "Employees").  Fourteen (14) Employees are salaried, and the remaining five (5) Employees are paid on an hourly basis.  The salaried Employees are paid twice monthly, on the 15th and the last day of the month.  Hourly Employees are paid bi-weekly.  In addition, during the course of the year, Employees accrue vacation, earned leave, personal time, and holiday pay, which may be paid in the ordinary course of the Debtor's business during the calendar year.

7.    Automatic Data Processing, Inc. ("ADP") processes the Debtor's payroll by drafting payroll checks and processing ACH payments into Employees' bank accounts.  ADP withdraws the necessary amount to cover the Debtor's payroll from a zero balance account tied to the concentration account maintained by the Debtor's parent company, PTC Group Holdings Corp. ("Parent"), by ACH reverse wire transfer.[2]  Though the Debtor has remained current on its payroll, as of the Petition Date, the Debtor owed its Employees compensation in the form of accrued but unpaid wages and salaries in the aggregate amount of approximately $124,891.94 (including payroll taxes).  The Debtor seeks authority to pay such accrued compensation as it becomes due and owing in the ordinary course of the Debtor's business operations.

8.    On April 23, 2015 (the "Termination Date"), the Debtor reduced its workforce and terminated the employment of thirteen (13) employees (the "Former Employees").  As of the Petition Date, the Former Employees are each owed compensation in the form of accrued but unpaid wages and salaries for the period commencing with the first day

---

[1] Capitalized terms used but not defined in this Motion have the meanings given in the First Day Declaration.
[2] The Debtor is in the process of opening its own post-petition payroll account that is separate and distinct from the Parent's cash management system.  Once opened, future payroll will be paid from the new post-petition account.

of the last pay period and terminating on the Termination Date in the aggregate amount of approximately $53,410.13 (including payroll taxes).

9. On the Petition Date, the Debtor filed its *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing Post-Petition Unsecured Bridge Financing Pursuant to 11 U.S.C. § 364(b) and (II) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 4001 and Local Rules 4001-1 and 9013-2* (the "Bridge Financing Motion"). Through the Bridge Financing Motion, the Debtor seeks Court approval to obtain bridge financing ("Bridge Financing") on an unsecured basis to satisfy the Debtor's operational needs while the Debtor solicits debtor-in-possession financing. Because the Debtor has no liquidity, the Debtor intends to use the Bridge Financing to pay the Prepetition Obligations.

**B.    Reimbursement Obligations**

10. The Debtor's policy is to reimburse Employees for certain expenses within the scope of their employment, including expenses for travel, lodging, meals, supplies, and other miscellaneous expenses. The Debtor estimates that, as of the Petition Date, less than $10,000.00 was owed to Employees and Former Employees on account of outstanding reimbursable business expenses. The Debtor seeks authority to pay such accrued prepetition reimbursement amounts.

**C.    Severance**

11. The Debtor offers a severance program to its salaried employees (the "Severance Benefits"). Although the severance payments vary on a case-by-case basis per salaried employee, generally, the payments consist of one week's pay for each year of employment. The Debtor seeks authority to maintain the Severance Benefits for the benefit of the salaried Employees and Former Employees at its sole discretion.

**D.     Employee Benefits**

12. The Debtor offers its Employees many standard employee benefits under its employee benefit programs (the "Employee Benefit Plans and Programs"). The Debtor's full-time Employees are offered a choice of medical plans, prescription drug, dental insurance, vision insurance, life insurance, accidental death and dismemberment, long-term disability insurance, flexible spending accounts, COBRA, and a 401(k) program. It also offers voluntary insurance plans for critical illness and cancer, group accident, and disability income, which are paid entirely by the Employees.

13. The Debtor self-insures medical benefits for the first $250,000 in claims per person per year for most of its Employees. The Debtor's claims administrator and stop-loss insurance carrier is Highmark Blue Cross Blue Shield ("Highmark"). Express Scripts, Inc. ("Express Scripts") acts as a third party administrator (the "TPA") for the self-insured prescription drug plan. In addition to paying the cost of the actual medical claims up to the stop-loss amount, the Debtor also pays Highmark administrative fees in the approximate amount of $110.93 per employee per month, which covers fees for Highmark, fees for Express Scripts, fees for the Debtor's employee benefits consultant, Henderson Brothers, Inc. ("Henderson"), and fees for special services such as short-term disability, claims processing, large case utilization reviews and stop loss premiums. The Debtor also offers its Employees dental benefits (and together with the medical and prescription drug plans, the "Self-Insured Employee Benefit Plans").

14. Under the medical benefit plans, Employee expenses are submitted to Highmark, which aggregates these expenses into one weekly claim, and each week the Debtor wires the aggregate expense to Highmark from the Parent's operating account and the Debtor's portion is then allocated to it through an intercompany charge. Highmark issues payments to the various medical or other benefit providers for expenses incurred under the benefit plans. Given

the nature and timing of the method by which claims are submitted under the Self-Insured Employee Benefit Plans, it is difficult to estimate the amount of such claims that were incurred prior to the Petition Date. Accordingly, the Debtor seeks authority to honor all obligations, including claims incurred prior to the Petition Date, under the Self-Insured Employee Benefit Plans. The chart below summarizes the Debtor's average monthly obligations for its Self-Insured Employee Benefit Plans:

| BENEFIT | ADMINISTRATOR | AVERAGE MONTHLY COST |
|---|---|---|
| Medical PPO | Highmark Blue Cross Blue Shield | $31,080 |
| Prescription Drug | Express Scripts, Inc. | $12,973 |

15. The Debtor also participates in the PTC Group Holdings Corp. 401(k) Plan (the "401(k) Plan"). The 401(k) Plan is administered by PTC Group Holdings Corp. and the Plan Trustee is Wells Fargo Bank, N.A. ("Wells Fargo"). Henderson, the Debtor's employee benefit consultant, receives a fee of $12 per participant per year. The Debtor withholds Employee contributions for the 401(k) Plan on a per pay period basis. Wells Fargo sweeps the funds from the Parent's account via ACH transfer approximately one to two business days after the pay period ends. The 401(k) Plan is a safe harbor plan and under the plan the Debtor matches 100% of the first 3% of the Employee contributions and 50% of the next 3% of Employee Contributions. The match is made during each payroll period and the match is immediately 100% vested.

E.    Workers' Compensation

16. The States of Texas and Kentucky require the Debtor to provide workers' compensation insurance. The Debtor provides workers' compensation insurance through a policy maintained by the Parent with Phoenix Insurance Company ("Travelers"). The Parent

pays an upfront premium and pre-funding amount to Marsh USA Inc. ("Marsh") for the benefit of Travelers prior to the beginning of each new policy year based upon estimated employee hours for such policy year. Following completion of the policy year, the premiums are audited against actual hours worked and claims made, and the reconciled amount may result in an additional payment to or refund from Travelers. These upfront premiums, pre-funding amount, and additional charges or refunds will then be allocated by the Parent to the Debtor through the intercompany account. For the current policy year, the Debtor is to pay Marsh, for the benefit of Travelers, an upfront premium and pre-funding payment in the amount of $43,662. In addition, the Debtor is to make ten (10) monthly premium and pre-funding payments in the amount of $21,831.

17. It is critical that the Debtor be permitted to continue to receive coverage under the Parent's workers' compensation program and to pay any reconciled balances and premiums for the new policy year, because alternative arrangements for workers' compensation coverage would almost certainly be more costly, and the failure to provide coverage might subject the Debtor and/or its officers to severe penalties. In addition, failure to pay workers' compensation claims might result in Employee attempts to compel payment through litigation or similar means and jeopardize the Debtor's ability to conduct business in Texas and Kentucky. Accordingly, the Debtor seeks authority to continue paying premiums, pre-funding amounts, and any additional charges resulting from yearly reconciliations related to workers compensation (collectively, the "Workers Compensation Claims and Premiums").

**RELIEF REQUESTED**

18. By this Motion, the Debtor respectfully requests that this Court enter an order, pursuant to sections 363(b), 363(c), 507(a), 1107(a), 1108 of the Bankruptcy Code, (i) authorizing the Debtor to pay or otherwise honor various employee-related prepetition

obligations of the Debtor to, or for the benefit of, the Employees and the Former Employees, (ii) authorizing the Debtor to continue post-petition the Employee Benefit Plans, and (iii) directing all banks to honor prepetition checks for payment of the Debtor's Prepetition Obligations (as defined herein) and allowing the Debtor to use Bridge Financing for the payment of Prepetition Obligations.

## BASIS FOR RELIEF REQUESTED

19. For the reasons set forth below, it is in the best interests of the Debtor's estate for this Court to authorize the Debtor to make such payments and honor obligations owed to, or for the benefit of, the Employees and Former Employees. These obligations (collectively, the "Prepetition Obligations") include, without limitation:

   a) unpaid prepetition wages, fees, and salaries, bonuses, severance, holiday and vacation pay, and sick leave pay earned prior to the Petition Date, and reimbursable business expenses incurred before the Petition Date;

   b) unpaid prepetition wages, fees, and salaries, bonuses, severance, holiday and vacation pay, and sick leave pay earned up to the Termination Date by the Former Employees, and reimbursable business expenses incurred before the Termination Date; and

   c) employee health and welfare benefit claims arising before the Petition Date with respect to Employees and Former Employees including, without limitation, (i) medical, dental, prescription drug, dental and vision claims under the Debtor's health care plan, and COBRA, (ii) life insurance, accidental death and dismemberment, long-term disability insurance (iii) flexible spending plan, (iv) workers' compensation claims arising before the Petition Date, and (v) 401(k) plan benefits (collectively, the "Employee Benefits").

**A. Payment Of The Employee and Former Employee Prepetition Obligations Should Be Authorized Under Section 507(a) Of The Bankruptcy Code.**

20. Sections 507(a)(4) and (a)(5) of the Bankruptcy Code give priority up to $12,475.00 per individual for prepetition claims for wages, salaries, vacation and sick leave, and claims for contributions to employee benefit plans. The Debtor believes that all of the Employee

Prepetition Obligations that the Debtor seeks to pay the Employees are entitled to priority under sections 507(a)(4) and (a)(5) of the Bankruptcy Code and, as such, will be paid in full as a condition to confirmation of a plan of reorganization. See 11 U.S.C. § 1129(a)(9). Payment of the Employee Prepetition Obligations in the ordinary course of business simply accelerates the timing of payment of obligations that otherwise will have to be paid in any event, consequently doing no harm to the priority scheme set forth in the Bankruptcy Code.

21.     The Former Employees' Prepetition Obligations are likewise entitled to priority status pursuant to sections 507(a)(4) and (a)(5) of the Bankruptcy Code. The fact that the Former Employees were terminated prior to the Petition Date does not affect the priority status of their respective claims. Because the Former Employees Prepetition Obligations will be paid in full as a condition to confirmation of a plan of reorganization, there is no harm to the Debtor, the Debtor's estate, creditors, or parties in interest if the Debtor pays the Former Employees Prepetition Obligations in the ordinary course of business. See 11 U.S.C. § 1129(a)(9). Moreover, accelerating the payments to the Former Employees benefits them, as they receive payment of their Prepetition Obligations by May 15, 2015 (at the latest). To the extent the claim of any Former Employee exceeds the statutorily mandated priority amount of $12,475.00, and the Debtor is aware of at least one such Former Employee, the amount of the Former Employee's claim that exceeds $12,475.00 will be treated as a general unsecured claim.

22.     To ensure funds are available to pay the Prepetition Obligations, the Court should authorize the Debtor to use Bridge Financing to make the ordinary course payments due on or before May 15, 2015, to Employees and Former Employees. In the event the Debtor has established and funded its post-petition bank accounts prior to May 15, 2015, the Debtor will use those accounts to fund the payroll instead of Bridge Financing.

B. **Payment Of The Employee Prepetition Obligations Is Appropriate Under Section 363 Of The Bankruptcy Code.**

23. This Court may authorize the Debtor's proposed payment of the Employee Prepetition Obligations under section 363(b)(l) of the Bankruptcy Code. Section 363(b)(l) of the Bankruptcy Code authorizes a bankruptcy court, after notice and a hearing, to authorize a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." See 11 U.S.C. § 363(b)(l). In order to obtain approval for the use of estate assets outside of the ordinary course of business, a debtor must articulate a valid business justification for the requested use. See In re U.S. Airways Group, Inc., 287 B.R. 643, 645 (Bankr. E.D. Va. 2002); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).

24. The business judgment rule "is a presumption that in making a business decision the directors . . . acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the corporation." Brehm v. Eisner, 746 A.2d 244, 264 n. 66 (Del. 2000) (quoting Aronson v. Lewis, 473 A.2d 805, 821 (Del. 1984)); Grobow v. Perot, 539 A.2d at 187; In re Tower Air, Inc., 416 F.3d 229, 238 (3d Cir. 2005); Holders of Tectonic Network, Inc. v. Wolford, 554 F. Supp. 2d 538, 555 n. 111 (D. Del. 2008); Continuing Creditors' Comm. of Star Telecomms., Inc. v. Edgecomb, 385 F. Supp. 2d 449,462 (D. Del. 2004); see also In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions").

25. When applying the "business judgment" rule, courts show great deference to the debtor's decision making. See, e.g., In re Castre, 312 B.R. 426, 430 (Bankr. D. Colo. 2004); In re Murphy, 288 B.R. 1, 5 (D. Me. 2002); In re Bakalis, 220 B.R. 525, 532 (Bankr. E.D.N.Y. 1998); In re First Wellington Canyon Assoc., 1989 WL 165028 *1 (N.D. Ill 1989); Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981).

Because certain of the Employee Prepetition Obligations are entitled to priority status, and because the retention of the Debtor's Employees is vital to the Debtor's ongoing operations and its prospects for successfully reorganizing, it is in the best interest of the Debtor's estate and is critical for the successful rehabilitation of the Debtor, to pay such claims in the ordinary course of business during this Chapter 11 Case.  See In re Sharon Steel Corp., 159 B.R. 730, 736 (Bankr. W.D. Pa. 1993) (authorizing payment of employee obligations as critical to a debtor's reorganization); In re Lehigh & New England Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981).

26. Section 363(b)(1) authorizes a debtor to use estate property other than in the ordinary course of business if there is a sound business justification for doing so.  Here, there can be little doubt that keeping employee obligations current, particularly when such obligations have priority status, is a reasonable exercise of the Debtor's business judgment.  The value of the Debtor's business will be maximized and operational disruptions caused by this Chapter 11 Case minimized, by the payment of all Employee Prepetition Obligations in full and in the ordinary course of business.  The continued service and dedication of the Employees is critical to the Debtor and the prospects for a successful reorganization.

**C.     Payment Of The Employee Prepetition Obligations Is Authorized Under Sections 1107(a) And 1108 Of The Bankruptcy Code.**

27. The Debtor, operating its business as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  Id.

28. According to the Court in CoServ, there are instances in which a debtor-in-possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." See id. The Court in CoServ specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Id. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id. at 498.

29. Payment of the Employee Prepetition Obligations meets each element of this standard. Any failure by the Debtor to pay the Employee Prepetition Obligations would have a severe negative impact on the morale of the Employees at a critical time for the Debtor and its business. Moreover, as described above, the Employees likely maintain priority claims against the Debtor for the vast majority, if not all, of the Employee Prepetition Obligations.

30. Second, the potential harm and economic disadvantage that would stem from the failure to pay the Employee Prepetition Obligations is grossly disproportionate to the amount of any prepetition claim that may be paid. Absent payment of the Employee Prepetition Obligations, Employee morale would decrease dramatically, likely leading to the loss of key Employees and other severe business disruptions costing far in excess of the amount of such obligations.

31.     Third, the Debtor has examined other options short of payment of the Employee Prepetition Obligations and has determined that to avoid significant disruption of the Debtor's business operations there exists no practical or legal alternative to payment of such obligations.

32.     Accordingly, the Debtor can meet its fiduciary duties as a debtor-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code only by payment of the Prepetition Obligations.

**D.     Section 105 Of The Bankruptcy Code And The Doctrine Of Necessity Support Payment Of The Employee Prepetition Obligations.**

33.     The Debtor's proposed payment of the Employee Prepetition Obligations also should be authorized under the "doctrine of necessity," which is grounded in section 105(a) of the Bankruptcy Code.  Pursuant to section 105 of the Bankruptcy Code, this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105.

34.     The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the chapter 11 efforts.  See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting that debtors may pay pre-petition claims that are essential to continued operation of business) (citing In re Lehigh & New England Ry. Co., 657 F.2d at 581).

35.     The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence.  See Just For Feet, 242 B.R. at 826 (approving payment of key

- 13 -

inventory suppliers' prepetition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing that the doctrine of necessity is derived from the court's equitable powers and allows debtors to make payment on prepetition claims to creditors who will refuse to supply services or material essential to the conduct of the debtors' business).

36. For the reasons discussed herein, it is evident that payment of the Employee Prepetition Obligations is necessary to the Debtor's effective chapter 11 process. In particular, without payment of the Employee Prepetition Obligations, the Debtor's business and operations will be detrimentally impacted through the reduction in Employee morale and the potential loss of key Employees during a critical time for the Debtor and its business. The Debtor believes that the amount to be paid to the Employees pursuant to this Motion are reasonable compared with the importance and necessity of preserving Employee loyalty and morale and with the difficulties and losses the Debtor likely will suffer if those amounts are not paid. This Court should exercise its equitable powers to grant the relief requested in this Motion.

37. Although the Debtor seeks to pay the Employee Prepetition Obligations and to continue post-petition the Employee Benefit Plans, such action, if authorized, should not be deemed to be an assumption or adoption of any agreement or policy providing such coverage. The Debtor retains its right to assume, reject, or modify any Employee wage, incentive, or benefits programs to the extent they are entitled to under contracts or agreements or applicable law.

**SATISFACTION OR WAIVER OF BANKRUPTCY RULES 6003 AND 6004(h)**

38. Under Bankruptcy Rule 6003, to use property of the estate or satisfy a prepetition claim within 20 days of the Petition Date, the debtor must demonstrate that such relief will prevent "immediate and irreparable harm." Fed. R. Bankr. P. 6003. As described more fully in the First Day Declaration, and for the reasons stated above, any interruption in the payment of the Prepetition Obligations would cause immediate and irreparable harm to the Debtor's estate. Further, to the extent that any aspect of the relief sought herein constitutes a use of property under section 363(b) of the Bankruptcy Code, the Debtor seeks a waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h). The relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate.

**NOTICE**

39. Notice of this Motion has been provided to: (i) the Office of the United States Trustee; (ii) all secured creditors or, as applicable, their administrative agent (or their counsel); (iii) the Debtor's twenty (20) largest unsecured creditors (or their counsel); (iv) Wells Fargo Bank, National Association; (v) JPMorgan Chase Bank, National Association; (vi) the Internal Revenue Service; and (vii) all parties that have filed a request for notices under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

**NO PRIOR REQUEST**

40. No previous request for the relief sought herein has been made to this Court or any other court.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtor to pay or

otherwise honor the Debtor's Prepetition Obligations and Employee Benefits; (ii) authorizing the Debtor to pay or otherwise honor the Severance Benefits; (iii) authorizing the Debtor to continue post-petition the Employee Benefit Plans in effect immediately prior to the Petition Date; (iv) directing all banks to honor prepetition checks for payment of the Debtor's Prepetition Obligations and allowing the Debtor to use Bridge Financing for the payment of Prepetition Obligations; and (v) granting the Debtor such other and further relief as is just and proper.

Dated: April 26, 2015

Respectfully submitted,

REED SMITH LLP

By: */s/ Luke A. Sizemore*
Eric A. Schaffer (PA ID No. 30797)
Luke A. Sizemore (PA ID No. 306443)
Joseph D. Filloy (PA ID No. 310167)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile: (412) 288-3063
Email: eschaffer@reedsmith.com
Email: lsizemore@reedsmith.com
Email: jfilloy@reedsmith.com

*Proposed Counsel to Debtor and Debtor-in-Possession*