# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Chapter 11 |
| PTC SEAMLESS TUBE CORP. f/k/a PTC ALLIANCE PIPE ACQUISITION LLC, | Case No. 15-21445 |
| Debtor. | |
| PTC SEAMLESS TUBE CORP., | Document No. __ |
| Movant, | |
| v. | |
| NO RESPONDENT. | |

**EMERGENCY MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING POSTPETITION UNSECURED BRIDGE FINANCING PURSUANT
TO 11 U.S.C. § 364(b) AND (II) SCHEDULING FINAL HEARING PURSUANT TO
<u>FED.R.BANKR.P. 4001 AND LOCAL RULES 4001-2 AND 9013-2</u>**

PTC Seamless Tube Corp. f/k/a PTC Alliance Pipe Acquisition LLC (the "<u>Debtor</u>"), the debtor and debtor-in-possession in the above-captioned case (this "<u>Chapter 11 Case</u>"), files this *Emergency Motion for Entry of Interim and Final Orders: (I) Authorizing Postpetition Unsecured Bridge Financing Pursuant to 11 U.S.C. § 364(b) and (II) Scheduling Final Hearing Pursuant to Fed.R.Bankr.P. 4001 and Local Rules 4001-2 and 9013-2* (the "<u>Motion</u>"). In support of this Motion, the Debtor relies on the *Declaration of Peter Whiting in Support of the Debtor's Chapter 11 Petition and First Day Motions* (the "<u>First Day Declaration</u>"). In further support of this Motion, the Debtor respectfully represents as follows:[1]

---

[1]  Capitalized terms not defined herein shall have the meanings given to them in the First Day Declaration.

## JURISDICTION AND VENUE

1. The Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The statutory predicates for the relief requested herein are sections and 364(b) and 503(b) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rules 4001-2 and 9013-2.

## BACKGROUND

### A. The Chapter 11 Filing

3. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Pennsylvania (the "Court").

4. The Debtor continues in the management and operation of its business and property as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or creditors' committee (a "Committee") has been appointed in this Chapter 11 Case.

5. Information regarding the Debtor and this Chapter 11 Case, including the Debtor's business, corporate structure, financial condition, and the reasons for and objectives of this Chapter 11 Case, is set forth in the First Day Declaration, which is incorporated herein by reference.

### B. Pre-Petition Capital Structure

6. As of the Petition Date, Seamless's total funded secured debt obligations totaled $160,800,000 (the "Pre-Petition Secured Loan Obligations") which obligations consist of

a revolving credit facility (the "ABL Facility") payable to Wells Fargo Bank, National Association (the "ABL Lender") and term loans (collectively, the "Term Loans") payable to certain lenders (collectively, the "Term Loan Lenders" and, together with the ABL Lender and their respective agents, the "Pre-Petition Secured Lenders") for which Credit Suisse AG, Cayman Islands Branch serves as administrative and collateral agent. The Pre-Petition Secured Loan Obligations are secured by first-priority liens on and security interests in substantially all of the Debtor's assets. Specifically, (a) the ABL Facility is secured by a first lien on the Debtor's working capital assets and a second lien on the Debtor's property, plant, and equipment and (b) the Term Loans are secured by a first lien on the Debtor's property, plant, and equipment and a second lien on the working capital assets

7. PTC Group Holdings Corp. ("PTC Group"), the Debtor's direct parent, operates a centralized cash management system for itself and the PTC Group subsidiaries. Historically, Seamless's operations and capital expenditures were funded by loans made by PTC Group. Such loans were funded by a combination of PTC Group revenues and draws on the ABL Facility. Each loan was booked on the books of PTC Group and Seamless. As of the Petition Date, the total amount of outstanding loans made by PTC Group to the Debtor is approximately $80 million.

8. As discussed in the First Day Declaration, due to the uncertainty with timing and costs to complete construction of the Hopkinsville plant, PTC Group is unwilling to continue to fund Seamless. The Debtor has filed this Chapter 11 Case to obtain breathing room from its creditors so that it may better evaluate what will be required to finance and complete that project. Ultimately, the Debtor believes that completing construction on the plant to enable it to produce tube will provide the greatest recovery to the estate and its creditors.

9. The Debtor and its financial advisor, Candlewood Partners, LLC, are soliciting potential DIP lenders. While the Debtor has been negotiating terms of a potential DIP facility with several potential lenders, the Debtor has not completed solicitation of and negotiation with potential lenders and, therefore, is unable to seek approval of a DIP facility at this time. The Debtor may need up to two weeks to complete this process, but the Debtor has no liquidity to fund operations during this time.

10. Under these circumstances, PTC Group has agreed to extend limited bridge financing on an *unsecured* basis to the Debtor, provided that such financing is entitled to administrative priority treatment under section 503(b)(1) of the Bankruptcy Code in accordance with section 364(b) of the Bankruptcy Code.

## RELIEF REQUESTED

11. Pursuant to sections 364(b) and 503(b)(1) of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rules 4001-2 and 9013-2, the Debtor respectfully requests that the Court enter an order:

(a) authorizing the Debtor to obtain unsecured bridge financing up to the aggregate principal amount of $650,000 (the "Bridge Facility") pursuant to the terms of that Letter Agreement dated April 25, 2015 (the "Bridge Facility Agreement"), made by and between PTC Group and the Debtor, a copy of which is attached hereto as **Exhibit A**;

(b) granting an allowed, administrative priority claim under section 503(b)(1) for any and all amounts borrowed by the Debtor under the Bridge Facility Agreement, in accordance with section 364(b) of the Bankruptcy Code;

(c) scheduling on an emergency basis, pursuant to Bankruptcy Rule 4001, Local Rule 4001-2, and Local Rule 9013-2, an interim hearing (the "Interim Hearing") on

this Motion for the Court to consider entry of an interim order in the form annexed to the Motion (the "Interim Order") as **Exhibit B** authorizing the Debtor, on an interim basis, to borrow up to the aggregate amount of $650,000 (as such amount is necessary to fund operations during the first two weeks of this Chapter 11 Case pursuant to the cash flow forecast attached hereto as **Exhibit C**);

(d)    scheduling a final hearing (the "Final Hearing") for this Court to consider entry of a final order approving the Bridge Facility on a final basis on or after May 14, 2015; and

(e)    granting certain related relief.

### TERMS OF THE BRIDGE FACILITY

12.    The following are the material provisions of the Bridge Facility and the Interim Order, which the Debtor submits are customary and reasonable for a financing of this type:

| | |
|---|---|
| **Borrower** | Debtor |
| **Lender** | PTC Group |
| **Financing Commitment** | The Bridge Facility consists of a bridge loan in an amount not to exceed $650,000 on the terms set forth in the Bridge Facility Agreement. |
| **Interest Rate** | The outstanding loans and other obligations under the Bridge Facility (the "Bridge Obligations") shall bear interest at the rate of 2% per annum, payable in cash at maturity. |
| **Term** | The term of the Bridge Facility shall extend until the earliest to occur of (x) the date the Debtor receives the proceeds of a DIP facility approved by final order of the Court or (y) one year after the commencement of the Chapter 11 Case. |
| **Administrative Priority of Bridge Obligations** | Pursuant to section 364(b) of the Bankruptcy Code, the Bridge Obligations shall constitute allowed claims against the Debtor with administrative priority pursuant to section 503(b)(1) of the Bankruptcy Code.  *See* Interim Order, ¶ 6. |
| **Permitted Uses** | The proceeds of the Bridge Facility shall be used for only those administrative expenses set forth on the cash forecast attached as Exhibit C and such other expenses as may be agreed to in writing by the Debtor and PTC Group. |

| **Events of Default** | The Bridge Facility provides the following occurrences constitute Events of Default:<br><br>(a) dismissal of the Chapter 11 Case or conversion to a case under chapter 7 of the Bankruptcy Code; or<br><br>(b) the appointment of a trustee, responsible officer, or examiner with enlarged powers with respect to the Debtor. |
|---|---|
| **Waiver of Discharge** | The Bridge Obligations will not be discharged under any chapter 11 plan confirmed in the Debtor's Chapter 11 Case. |

## BASIS FOR REQUESTED RELIEF

### A.    Applicable Authority

13. Section 364(b) of the Bankruptcy Code provides that "[t]he court, after notice and a hearing, may authorize the trustee to obtain unsecured credit or to incur unsecured debt other than under subsection (a) of this section, allowable under section 503(b)(1) of this title as an administrative expense."

14. Bankruptcy Rule 4001(c) governs the procedures for obtaining authority to incur debtor-in-possession financing and provides, in relevant part:

> The court may commence a final hearing on a motion for authority to obtain credit no earlier than 14 days after service of the motion. If the motion so requests, the court may conduct a hearing before such 14-day period expires, but the court may authorize the obtaining of credit only to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing.

*See* Bankruptcy Rule 4001(c)(2).

### B.    Approval Of The Bridge Facility Is Warranted Under These Circumstances

15. The Debtor has an immediate need to obtain the Bridge Facility to permit, among other things, the orderly continuation of the operation of its business. The limited Bridge Facility is designed to provide the Debtor additional time to market and negotiate DIP financing on the best terms available, and seek Court approval of a DIP facility. As demonstrated by the cash forecast attached as Exhibit C, the Debtor needs immediate access to the Bridge Facility to

pay expenses that are necessary to continue operations for the next two weeks. Those expenses are limited to employee wages and benefits, taxes, and utilities as well as certain expenses related to due diligence for the DIP financing the Debtor seeks. None of Bridge Facility proceeds will be used to pay professionals or to fund capital improvements.

16. Approval of the Bridge Facility will not prejudice any of the Debtor's creditors. To the contrary, these new funds will provide the Debtor with an opportunity to obtain financing to support its reorganization efforts designed to maximize value for the Debtor's estate and its creditors. The Debtor believes that, by completing construction of the seamless tube plant to enable it to produce tube, the Debtor will generate a greater return for the estate and its creditors than if a liquidation were to occur at this time.

17. Likewise, approval of the Bridge Facility will not impair any rights of the Debtor's creditors. Consistent with the Bankruptcy Code and Congressional intent, loans under the Bridge Facility will receive the same treatment as any other post-petition expense that preserves the estate. And, because the Bridge Facility will be made as an unsecured loan, it will not impair the liens of any secured creditors.

18. The Debtor submits that, without the Bridge Facility, it will be forced to liquidate its assets, eliminating any possibility of a distribution to unsecured creditors. Approval of the Bridge Facility is, therefore, in the best interest of the Debtor's estate and its creditors.

19. Bankruptcy Rule 4001(c) provides that a final hearing on a motion to obtain credit pursuant to section 364 may not be commenced earlier than 14 days after the service of such motion. Upon request, however, the Court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent

necessary to avoid immediate and irreparable harm to the debtor's estate. *See* Local Rule 4001-2.

20. Based upon the foregoing, the Debtor requests entry of an Interim Order approving the Bridge Facility on an interim basis and authorizing the Debtor to obtain credit under the Bridge Facility. Absent such interim relief, the Debtor's estate will be immediately and irreparably harmed because without the Bridge Facility the Debtor will have insufficient liquidity to operate and attempt to reorganize; instead, the Debtor will be forced to liquidate its assets. The Debtor seeks approval on an interim basis of only those amounts as are necessary for the next two weeks of operations. *See* Exhibit C.

21. The Bridge Facility was extended by PTC Group in good faith with PTC Group represented by separate counsel. Therefore, the Debtor seeks a finding in the Interim Order (and in a final order) providing that PTC Group is entitled to the protections afforded under section 364(e) of the Bankruptcy Code.

22. The Debtor further requests that the Court conduct a Final Hearing on the Motion, following notice to parties in interest as discussed below, on or after May 14, 2015.

## **NOTICE**

23. Notice of this Motion has been given by facsimile and/or overnight delivery to the following parties or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) all secured creditors or, as applicable, their administrative agent (or their counsel); (iii) the Debtor's twenty (20) largest unsecured creditors (or their counsel); (iv) PTC Group; (v) all persons that have asserted liens against the Debtor's property; and (vi) all parties that have filed a request for notices under Bankruptcy Rule 2002. In light of the nature of the relief requested herein, the Debtor submits that no other or further notice is necessary.

24. The Debtor respectfully requests that it be authorized to serve a copy of the Interim Order, if approved by the Court, which fixes the time and date for filing objections, if any, and schedules the Final Hearing by U.S. first-class mail upon the following parties or, in lieu thereof, to their counsel: (i) the Office of the United States Trustee; (ii) all secured creditors or, as applicable, their administrative agent (or their counsel); (iii) the Debtor's twenty (20) largest unsecured creditors (or their counsel); (iv) PTC Group; (v) all persons that have asserted liens against the Debtor's property; (vi) all parties who have filed requests for notice under Bankruptcy Rule 2002; and (vii) all other parties ordered by the Court. The Debtor requests that the Court consider such notice of the Final Hearing to be sufficient notice under Bankruptcy Rule 4001 and Local Rule 4001-2.

**REQUEST FOR EXPEDITED HEARING PURSUANT TO LOCAL RULE 9013-2**

25. The Debtor believes that just cause exists to support its request for an expedited hearing on this Motion. The Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code contemporaneously herewith. Absent an expedited hearing on this matter, the Debtor, its estate, and creditors would be harmed because the Debtor's ability to access cash or to receive financing to continue daily operations would cease. The need for an expedited hearing has not been caused by the lack of due diligence by the Debtor or its counsel.

WHEREFORE, the Debtor respectfully requests that the Court enter an order, substantially in the form attached hereto as Exhibit B, and grant such other and further relief as may be just and proper.

Dated:  April 26, 2015

Respectfully submitted,

REED SMITH LLP

By: */s/ Joseph D. Filloy*
Eric A. Schaffer (PA ID No. 30797)
Luke A. Sizemore (PA ID No. 306443)
Joseph D. Filloy (PA ID No. 310167)
Reed Smith Centre
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone:  (412) 288-3131
Facsimile:  (412) 288-3063
Email:  eschaffer@reedsmith.com
Email:  lsizemore@reedsmith.com
Email:  jfilloy@reedsmith.com

*Proposed Counsel to Debtor and Debtor-in-Possession*